Robert E. MAY, Plaintiff,

v.

HOBART CORPORATION, Defendant.

Civ. No. 91-5677.

United States District Court,
E.D. Pennsylvania.

Aug. 25, 1993.

Jeffrey A. Smith, Walter H. Flamm, Frank P. Spada, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for plaintiff.

Paul R. Lewis, Kleinbard, Bell & Brecker, Philadelphia, PA, for defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

Plaintiff Robert E. May was fired from his job as a Regional Manager[1] by defendant Hobart Corporation in January, 1991, at which time Mr. May was 52 years old. Hobart terminated plaintiff's employment during the course of a corporate reorganization and reduction-in-force (RIF) designed to improve customer relations and to revive the company's poor sales performance. Mr. May filed suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, complaining that Hobart had not retained him during the RIF because it wanted to replace him with a younger employee. Following a trial, the jury found Hobart liable for age discrimination in firing Mr. May. Hobart now asks this court to grant its motion for a judgment as a matter of law pursuant to Fed.R.Civ.Proc. 50 and to overturn the jury's verdict. Alternatively, Hobart moves for a new trial under Fed.R.Civ.Proc. 59(a). Upon consideration of defendant's motions, I find that the standard for a judgment as a matter of law has not been met. I find, however, that the jury instructions were both improper under recent law and prejudicial to defendant. Accordingly, the motion for a new trial is hereby granted.

---

1. The papers submitted in this case refer variously to "Region Manager" and "Regional Manager" as job titles. For purposes of consistency this opinion will use the term "Regional Manager".

*I—Judgment as a Matter of Law:*

The standard for granting a judgment as a matter of law is set forth in Fed.R.Civ.Proc. 50(a), which reads in relevant part as follows:

> If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third-party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

Judgments as a matter of law include what used to be called directed verdicts and judgments notwithstanding the verdict (JNOV), the difference being whether the motion is brought before or after jury deliberations. Courts apply the same standard whether ruling on a JNOV motion—which is in effect if not in terminology the instant motion—or a motion for directed verdict. *Keith v. Truck Stops Corp. of America,* 909 F.2d 743, 744–45 (3rd Cir.1990). It is clear from the case law and from Rule 50 that the standard for granting a JNOV is stringent. Indeed, the comments accompanying the 1991 amendment to Rule 50 make clear that the standard is designed to preserve "the court's duty to assure enforcement of the controlling law and is not an intrusion on any responsibility for factual determinations conferred on the jury." The rule authorizes the court to enter a judgment as a matter of law only when "it is apparent that either party is unable to carry a burden of proof that is essential to that party's case." *Id.* In so doing, the court must review the record in the light most favorable to the non-moving party to see if it contains "the minimum quantum of evidence from which a jury might reasonably afford relief." *Keith,* 909 F.2d at 744–45 (internal citations omitted).

*Plaintiff's prima facie case:* In age discrimination actions under the ADEA, as under Title VII, the plaintiff must make out a prima facie case of discrimination. *Billet v. CIGNA Corp.,* 940 F.2d 812, 816 (3rd Cir. 1991). Mr. May's initial burden was to make such a prima facie case by showing (1) that when he was terminated he was over 40 years old, and therefore belonged to the protected class of employees under the ADEA; (2) that he was reasonably qualified for available positions; (3) that he was dismissed from Hobart despite these qualifications; and (4) that a person sufficiently younger than May to create an inference of age discrimination filled the position sought by May. *See id.* at n. 3; *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 791–92 (3rd Cir.1985).

The prima facie case creates a presumption that the defendant acted with an invalid discriminatory motive. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The burden then shifts to the defendant to offer a valid, nondiscriminatory explanation for the challenged action. *Billet,* 940 F.2d at 816. It is important to note that plaintiff at all times retains the burden of persuasion—defendant's burden at this point is simply to produce enough evidence to raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* Once defendant meets this burden of production, the presumption of discrimination drops out. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 898 (3rd Cir.1987).

At trial, May's prima facie case consisted of showings that he was 52 years old when Hobart fired him, that he was qualified based on past experience as a Regional Manager to be either a Foodservice or Food Retail Regional Manager, that despite successful previous performance in such a job he was fired, and that Scott Schumm, who was 34 years old at the time, was awarded a Regional Manager position. For purposes of this motion, I will accept the jury's finding that May proved each of the above elements by a preponderance of the evidence.

*Defendant's showing of legitimate motives:* In response to plaintiff's prima facie case, Hobart articulated a nondiscriminatory reason for dismissing May as part of the RIF: that the person charged with making the decision, Gerald Wachholz, considered May's interpersonal skills to be insufficient for the reorganized Regional Manager positions. The company claimed that he was

passed over in favor of highly qualified individuals who were perceived to have superior interpersonal skills. To support its explanation, Hobart presented testimony by Wachholz that May's reputation disqualified him from consideration for any managerial posts. With respect to the single case in which May was allegedly replaced by a much younger employee—Scott Schumm, age 34—Wachholz testified that Schumm was regarded as highly qualified and very good at working with others. He stated that Schumm cannot be viewed to have been improperly favored over Mr. May, as Mr. May was not even considered for the post because of his allegedly poor reputation.

Hobart further presented testimony by David Geiger. Geiger testified that May was generally viewed as a divisive force who was at odds with his peers within the company as well as with management at Hobart headquarters in Ohio. Geiger offered as specific examples three "poison pen" letters written by May, as well as an incident in which May allegedly accused his counterpart from another region of stealing a sale from him.

With respect to the "Food Retail" (as opposed to "Foodservice") positions for which Mr. May was not considered, Hobart presented evidence that candidates were categorized at the outset as being on one side of the business or the other. Because of his qualifications and experience, the plaintiff was put in the Foodservice category, thereby removing him from consideration for Food Retail jobs. Hobart claims that "virtually all" Foodservice personnel were precluded from Food Retail consideration, and vice versa.

Finally, Hobart presented evidence that in every case except for that of Scott Schumm, the persons selected for the Regional Manager posts were 40 or older, and therefore members of the ADEA protected class. The Mid–Atlantic Regional Manager, Mr. John Vollette, was six months older than May. Furthermore, when it came to choosing two sales representatives from three candidates, employees aged 65 and 52 were retained over one who was 42 years old. Some testimony was presented that the percentage of employees over 40 years of age was the same after the RIF as it was before.

Based on the above, it seems clear that Hobart met the limited burden of production and explanation required to drop the initial presumption of discrimination from the case. I emphasize that at that point in the case Hobart did not have a burden of *persuasion* with respect to its proffered non-discriminatory explanation for firing May. Rather, the company only had to raise a genuine issue of fact as to discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Hobart successfully met this burden.

*Plaintiff's evidence of pretext:* Once Hobart met its burden of providing an explanation and supporting evidence of a non-discriminatory motive, May had two ways to proceed. One was to argue that defendant might have had some legitimate motivations for firing him, but that it would not have done so except for plaintiff's age. The case would then have proceeded as a "mixed-motive" case, with the plaintiff having to prove that discrimination played a determinative role, but not having to prove that the avowed legitimate motives were absent. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (in mixed-motive case "plaintiff must show that the employer actually relied on her gender in making its decision"). The alternative was to proceed under pretext analysis, in which the plaintiff tries to show that the employer's stated legitimate reasons for dismissal are false. Plaintiff thereby proves indirectly, through inferences drawn from the employer's lack of credibility, that he was the victim of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. May proceeded under pretext analysis, and emphasized evidence that Hobart's explanation for his firing was not worthy of credence.

As a threshold matter, May argued that he was qualified for a Foodservice *or* a Food Retail Regional Manager position, citing prior experience as a Regional Manager and written evaluations from his supervisor at the time, Bert Natalicchio. He further showed that the job description for the reorganized Food Retail Regional Manager job was identical to that for the Regional Manager position that May had previously held. To un-

dermine Hobart's contention that people were rigidly categorized as either "foodservice" or "food retail" personnel for RIF reorganization purposes, May presented evidence that two less experienced individuals aged 39 and 34 were listed as being able to go into either side of the business.

The bulk of May's evidence pertains to his own record at the company. In an effort to undermine Hobart's assertions that he was a difficult employee, he presented personnel evaluations showing him to be the highest rated manager in his sector, and among the best in the country. He also showed that he had received Hobart's highest award for sales performance in 1982, 1987, 1988 and 1989. Moreover, May argues that an inability to get along with others was never specifically mentioned in any of his evaluations, and that he was never personally confronted about such a problem. He explains the reference to tact and diplomacy as development needs in his February 24, 1989 evaluation as being contradicted by other statements in the same document, and as having been down-played by his superior, Mr. Natalicchio.

Jeff Livezy, who had been a Branch Manager in Mr. May's sector, testified that the plaintiff had been an excellent manager about whom he had never heard any complaints from co-workers. Mr. Livezy also testified that in his experience as a member of the Sector Staff, a group consisting of Mr. May's peers and superiors, he had never heard any formal or informal criticism of Mr. May's behavior.

I reiterate that for JNOV purposes the evidence must be reviewed in the light most favorable to Mr. May. Furthermore, my role in ruling on this motion is not to make my own determination of who, as a factual matter, has the preponderance of the evidence. At issue is a question of law: does the plaintiff's evidence reach the minimum level required for the jury to have reached its verdict? In this case, I find sufficient evidence—not a lot of evidence, to be sure, but enough to reach the threshold of sufficiency—for a jury reasonably to conclude that Hobart's explanation for dismissing May was not credible. The documentary evidence shows that in many respects May was a valued employee who performed his job well. Furthermore, Mr. Livezy's testimony and the written evaluations provide at least some basis for believing that May got along better with others than Hobart claims. This is not to say that the testimony of Hobart's witnesses did not strongly support its explanation. The relative weight that the jury accords to each side's evidence, so long as each side meets the "minimum quantum" requirement, will not be second-guessed at this point. Similarly, it is not the court's province to substitute its own judgments about the credibility of live witnesses for those that the jury might have made in arriving at its conclusion. With these constraints, and based on the evidence in the record, I find that a reasonable jury could have found Hobart's explanation to be a pretext for its true motives in dismissing May.

*The jury's inference of discrimination:* This motion thus raises the difficult question of whether the finding of pretext, coupled with other evidence of discrimination, is legally sufficient to justify the jury's inference that Hobart dismissed Mr. May because of his age. The answer depends on two factors: (1) the permissible scope of inference from the evidence of pretext; and (2) whether those permissible inferences comport with the legal standards set forth in the jury instructions.

The extent to which a showing of pretext alone creates a permissible inference of discrimination is fairly settled, although recently the Supreme Court has cabined the strength of that inference. Substantial precedent indicates that proof of pretext can satisfy a discrimination plaintiff's entire burden. For example, in *Burdine* the Supreme Court held that the burden of proving pretext

merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The passage appears to state that a plaintiff may prove discrimination by persuading the factfinder that the employer's explanation is pretext. Indeed, it can be read to say that proof of pretext not only *allows* an inference of discrimination, but that it *compels* such a finding. Yet it is not clear that *Burdine* actually established the latter rule. The case holds that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093. This seems in some tension with equating pretext evidence with discrimination evidence. Furthermore, the authority that *Burdine* cites for the passage at issue requires evidence of actual discrimination, not merely of pretext. *Id.* at 256, 101 S.Ct. at 1095 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973)).[2]

The Supreme Court recently settled the issue in *St. Mary's Honor Center, et al. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Court resolved any ambiguity left in the wake of *Burdine* and *McDonnell Douglas* and held that a finding of pretext does not, as a matter of law, compel a finding in the plaintiff's favor. *Id.* at ——, ——, 113 S.Ct. at 2748, 2751. In its Supplemental Memorandum, Hobart argues that *Hicks* therefore requires a plaintiff to put forth evidence of discrimination that goes beyond evidence of mere pretext. Hobart is only half right: for a plaintiff to get a judgment as a matter of law, he or she must present evidence of actual discrimination. After *Hicks*, however, it is still *permissible* for a jury to infer discrimination from pretext; it simply is not required. *Id.* at —— & n. 4, 113 S.Ct. at 2749 & n. 4.

2. The federal courts of appeal have gone in varying directions on whether proof of pretext compels judgment as a matter of law for a discrimination plaintiff. *See e.g. EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1321 (10th Cir.1992) (finding of pretext does not compel finding of discrimination); *King v. Palmer,* 778 F.2d 878, 881 (D.C.Cir.1985) (proof of pretext suffices to prove discrimination). The cases in the Third Circuit have generally held that a plaintiff's showing that an employer's explanation is pretextual carries

■ Therefore, under current law, a factfinder may infer discrimination from proof of pretext. Indeed, I so instructed the jury at trial:

> Since Hobart has offered some evidence for [its] reasons as to why Mr. May was not retained, you must return a verdict in Hobart's favor *unless* you find that Mr. May has established, by a preponderance of the evidence, that the reasons Hobart has given for Mr. May's not being retained are a mere pretext; i.e., that these reasons are not the true reasons and are just a coverup for what was in truth discrimination by Hobart against Mr. May based on Mr. May's age. Mr. May may demonstrate that Hobart's explanation is mere pretext by showing either that a discriminatory reason is more likely to have motivated Hobart than the reasons advanced, or that the reasons advanced by Hobart are simply unworthy of belief.

As I have already discussed, I find the evidence of pretext that Mr. May presented to be minimally sufficient to withstand a judgment as a matter of law. The question then becomes whether the inferences of discrimination that the jury could properly draw from the pretext evidence meet the legal standard for liability set out in the jury instructions. I must conclude that they do. If proof of pretext can, as a matter of law, support an inference of discrimination, then evidence from which a reasonable jury could find pretext must closely correlate with the evidence from which that jury could conclude that an employer discriminated.

■ The amount of evidence that is legally sufficient of course depends on how strong a finding of discrimination the jury must make in order to hold an employer liable. Evidence required to support a conclusion that discrimination was the *sole* motive for dis-

the former's burden. *Chipollini,* 814 F.2d at 898; *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1396 (3rd Cir.1984) (a showing of pretext "is itself *equivalent* to a finding that the employer intentionally discriminated"). Yet at least one recent case indicates that the evidence must show that the employer's explanation is a pretext for *discrimination* specifically. *Billet,* 940 F.2d at 816 ("plaintiff must prove by a preponderance of the evidence that the articulated reasons are a pretext for discrimination").

crimination, for example, would be greater than that required to conclude that discrimination simply played *a* role, even if a determinative one. In this case, the liability standard governing the trial was the latter: the jury was instructed that it could find for Mr. May if it was persuaded by a preponderance of the evidence that he was terminated "at least in part because of his age"; that "Mr. May's age was one of the dispositive factors in Hobart's decision not to retain him"; "that age was one of the reasons for his termination." While it is debatable whether the evidence of pretext and the other circumstantial evidence could support an inference that age was the *only* reason that Hobart fired Mr. May, I find that such evidence was legally sufficient to support the jury's conclusion that age played at least some role in the action.

## II—*Motion for a New Trial:*

Hobart also moves this court to grant a new trial pursuant to Fed.R.Civ.Proc. 59(a). Defendant asserts two grounds for the granting of its motion. First, the company argues in its initial Memorandum that two evidentiary rulings by this court during trial violated Fed.R.Evid. 401 & 403, and were so unfairly prejudicial to the defendant as to make the jury's verdict untenable. Second, Hobart argues in its Supplemental Memorandum that a Third Circuit decision handed down shortly after trial establishes that the jury instructions were erroneous, requiring a new trial. Because I conclude that the instructions were indeed erroneous and that a new trial is called for, it will not be necessary to resolve the evidentiary issues.[3]

*Jury instructions on pretext:* After the end of trial and while timely post-trial motions were pending, the Third Circuit handed down a decision in *Griffiths v. CIGNA Corp.,*

988 F.2d 457 (3rd Cir.1993). Hobart argues that this case requires the court to set aside the jury verdict and to grant its motion for JNOV, or in the alternative to order a new trial.

*Griffiths* is directly relevant to this case. The Third Circuit there disapproved its own apparently well-settled jurisprudence and held that in pretext cases the jury should be instructed that, to infer discrimination from pretext, it must find that discrimination was the *sole* motive for the employer's action. *Griffiths,* 988 F.2d at 472. It is not enough for the jury to find that discrimination was one of several concurrent motives, even if was a "but for" cause of the plaintiff's dismissal.

Prior to *Griffiths,* liability would attach in a Third Circuit pretext case if the factfinder found that discrimination was *a* cause for the employer's action, even though there might also have been concurrent legitimate motivations. The doctrine to this effect had been reaffirmed as recently as 1992 in *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3rd Cir.1992) ("plaintiff-employee has burden of persuading the trier of fact that age was a determinative, though not necessarily the sole, factor" in dismissal). For numerous earlier cognate formulations see also *Bruno v. W.B. Saunders Co.,* 882 F.2d 760, 764 (3rd Cir.1989) (the ultimate issue is "whether the plaintiff proved by a preponderance of the evidence that age was a determinative factor in the employer's hiring decision"); *Chipollini,* 814 F.2d at 897 (same); *Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175, 179 (3rd Cir.1985) ("The 'but for' test does not require a plaintiff to prove that the discriminatory reason was *the* determinative factor, but only that it was *a* determinative factor") (citing *Smithers v. Bailar,* 629 F.2d 892, 898 (3rd Cir.1980)).

---

**3.** The allegedly erroneous rulings involved the admission of post-RIF evaluations of retained Foodservice Regional Managers, and of "inflammatory" memoranda written by Bert Natalicchio. Although the issue need not be fully addressed here, the court notes that it has great discretion on evidentiary issues. Plaintiff has raised several grounds on which the challenged documents may be considered relevant, and the mere existence of some prejudice, or risk thereof, to defendant is not enough under the federal rules to keep that evidence from the jury. At trial, I considered the defendant's objections to the documents at issue, and found their relevance to outweigh risk of prejudice. The fact that the jury found for defendant does not suffice to show that the contested evidence was indeed unreasonably prejudicial. Hobart's Memorandum adds little to the objections raised at trial, thus I am skeptical that the challenged evidentiary rulings could be the basis for granting a new trial.

In rejecting this authority, the *Griffiths* court cited *Price Waterhouse*, 490 U.S. at 245–47, 109 S.Ct. at 1788–89, for the proposition that only in mixed-motive cases is it proper to instruct the jury that discrimination need not be the sole motive. *Griffiths*, 988 F.2d at 471. The *Price Waterhouse* plurality distinguished mixed-motive cases from pretext cases by arguing that "[w]here a decision was the product of a mixture of legitimate and illegitimate motives—it simply makes no sense" to inquire whether a particular reason was "'*the* true reason' for the decision." *Price Waterhouse*, 490 U.S. at 247, 109 S.Ct. at 1789 (internal citations omitted). On the other hand, the Court noted that this is precisely the question asked in pretext cases according to *Burdine*, because "the premise of *Burdine* is that *either* a legitimate *or* an illegitimate set of considerations led to the challenged decision." *Id.* at 247, 109 S.Ct. at 1789 (emphasis in original).[4]

■ The Third Circuit in *Griffiths* appears to have read the *Price Waterhouse* distinction between mixed-motive and pretext cases to imply a tradeoff in choosing either strategy, reflected in the legal standard the jury is instructed to apply. In return for bearing a direct burden of proof as to discrimination, the mixed-motive plaintiff need only prove that discrimination was *a* determinative factor, absent which the employer's decision would have been different. Such a finding by the trier of fact will suffice to impose liability on the defendant. *Id.* In contrast, the plaintiff in a pretext case need not prove discrimination directly, and may show instead that the employer's legitimate explanation is false. The tradeoff, however, is that the proof of pretext must be so strong as to

preclude anything other than discrimination from playing a causal role in the challenged action. Only a finding that discrimination was *the* motive will impose liability on the employer. *Id.* 490 U.S. at 246–47, 109 S.Ct. at 1788–89.

■ The *Griffiths* court found the balance of burdens and liability standards reflected in the above tradeoffs to be upset by a jury charge that combined the weaker causality standard allowable in a mixed-motive case with the weaker direct proof of discrimination allowable in pretext cases. 988 F.2d at 472 ("in pretext cases *the claim is that* the discriminatory motive was the sole cause of the employment action and therefore it is inappropriate to state that the plaintiff only need show that discrimination played 'a motivating' or 'a substantial' role.") (emphasis in original). Accordingly, the rule in the Third Circuit is now that the jury in a pretext case must be instructed that the plaintiff bears the burden of proving, by a preponderance of the evidence, that age was the sole reason that he was fired.

■ Plaintiff argues that *Griffiths* is not relevant to this case because the jury charge contained the "but for" language that the instructions at issue in *Griffiths* lacked. Plaintiff furthermore claims that the charge did not instruct the jury that it could find liability if it found discrimination to be "*a* motivating factor". On the latter point, the text of the jury instructions plainly shows plaintiff's claim to be inaccurate; the charge states clearly that discrimination only had to be "one of the reasons" that May was terminated.[5]

4. Thus, one can read the Court as having perceived mixed-motive cases and pretext cases to start with fundamentally different premises. In the former, the plaintiff might allow that some legitimate considerations entered the challenged decision, but tries to show that discrimination was also a determinative factor. Therefore, the plaintiff in a mixed-motive case bears a direct burden of persuasion as to discrimination. In contrast, a plaintiff proceeding under pretext analysis tries to show that the employer's stated legitimate reasons for its actions are not credible, pursuing the logic that, if the legitimate motives are false, then the true motive must have been discrimination. *Price Waterhouse* can thus be seen to interpret *Burdine* as setting up something

of a gamble for a pretext plaintiff: he or she has less of a burden than mixed-motive plaintiffs do to show discrimination directly, but must provide such convincing evidence of pretext that the only possible explanation is that the employer discriminated. 490 U.S. at 247, 109 S.Ct. at 1788–89. On the other hand, the mixed-motive plaintiff need not show that all of the employer's avowed reasons for the challenged actions are false, but must directly persuade the trier of fact that discrimination played a causal role. *Id.* at 244, 109 S.Ct. at 1787.

5. As noted *supra*, page ——, the jury was instructed that it could find for Mr. May if it was

On the first point, Mr. May's argument also falls short. *Griffiths* addresses the very fact that "but for" causation may mean different things in different contexts. 988 F.2d at 471. *Griffiths* requires plaintiffs in pretext cases to meet a much higher "but for" standard than must be met by plaintiffs in mixed-motive cases. So the mere recitation of the words "but for" in a jury instruction does not resolve the problem. An event may, after all, have several "but for" causes, none of which need strictly dominate the others. Consider the action of a bicycle in motion: the chain, the crank, the pedals, the wheels and of course the cyclist herself are all determinative. The absence of any one of them will prevent the bicycle from moving, yet none is the single cause of its functioning. In the employment context, meanness, unfairness, harsh economic reality and other factors may all coexist with age (or indeed any other protected classification) as reasons that an adverse personnel action was taken. It may be the case that (1) no one of these factors would by itself have caused the challenged personnel action, but also (2) the personnel action would not have occurred absent any one of them. Each is thus a "but for" cause. In pretext cases in this circuit, however, the plaintiff must now show something more: he or she must persuade the trier of fact that discrimination was the *sole* underlying motivation for the challenged employment decision.

At trial, the matter at hand proceeded under pretext analysis, as is acknowledged by both parties in their post-trial memoranda and as is stated in the jury instructions. In light of the above discussion, therefore, it is clear that the instructions do not comport with *Griffiths.*

■ *Applicability of the new standard:* Given that the jury instructions are incompatible with current circuit law, it remains to be determined how that law applies to this case in its current procedural posture. Plaintiff argues in his Opposition to Hobart's Supplemental Memorandum that the correctness of the jury charge may not now be raised by

defendant, as defendant raised no objection to the charge at trial. As a general matter, plaintiff is correct that objections to jury instructions are waived if not raised before the jury retires to deliberate. *See* Fed. R.Civ.Proc. 51. Thus, absent timely objection at trial, a court will exercise its discretion to set a verdict aside only where the unobjected-to jury instructions are highly prejudicial, carrying with it the capacity for manifest injustice. *Cf. Simmons v. City of Philadelphia,* 947 F.2d 1042, 1078 (3rd Cir. 1991).

■ The case at hand, however, differs somewhat from the typical situation in which a party fails to object. Rule 51 requires that a party objecting to jury instructions "stat[e] distinctly the matter objected to and the grounds for the objection." In this case, the jury instructions employed—discrimination as *a* cause rather than *the* cause of Mr. May's dismissal—were in full conformity with prevailing Third Circuit law as of the time of trial. It would therefore have been of questionable wisdom for Hobart to have objected at trial that a standard like the one shortly to be adopted in *Griffiths* should be applied, as it would have been difficult for the company to state valid grounds for its objection as required by Rule 51. It thus seems that classic plain error review, requiring both that the error have been clear under established law and that it have been prejudicial to the moving party, is somewhat inapposite.

If one considers the jury instructions in light of the subsequently announced *Griffiths* rule—a rule which Hobart could have had no reason to anticipate at the time of trial—then the liability standard applied by the jury in Mr. May's case is clearly incorrect. There is strong authority for applying the *Griffiths* standard retroactively in reviewing the jury instructions for purposes of the instant post-trial motions. The Supreme Court has recently stated that it is error to refuse retroactively to apply a rule of federal law to a non-final case, when that rule has already been applied in the case announcing it.

---

persuaded by a preponderance of the evidence that he was terminated "at least in part because of his age"; that "Mr. May's age was one of the

dispositive factors in Hobart's decision not to retain him"; or "that age was one of the reasons for his termination."

*James B. Beam Distilling Co. v. Georgia,* — U.S. —, —, 111 S.Ct 2439, 2448, 115 L.Ed.2d 481 (1991) ("when the court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata").

The Third Circuit applied the stronger jury instruction rule in *Griffiths,* the very case in which it was announced. Furthermore, the case at bar is non-final. Although the jury rendered a verdict, post-trial motions were filed in a timely fashion and were pending at the time of *Griffiths.* The only question that remains is whether application is barred in this case because of "procedural requirements or res judicata". I find that it is not. The doctrine of res judicata clearly does not apply, as the issues decided at trial are precisely those at issue in the post-trial motions.

With respect to the procedural requirements, it could be argued that the failure to object should except Mr. May's case from retroactive application of the *Griffiths* rule. Such an argument would make little sense in the instant case, however, and would trump the very purpose of retroactivity—treating similar claims according to the same legal standards. *James B. Beam,* — U.S. at —, 111 S.Ct. at 2446. It is circular to insist on prior objection when the subject of retroactive application is the very rule creating the grounds for objection. Such a rule would make retroactivity impossible in a large number of situations. The key procedural requirement is that the issues regarding retroactive application of new law be raised before the case is final, and in that respect Hobart's timely post-trial motions suffice.

■ *Conclusion:* Considering Hobart's post-trial objection to the jury charge in light of *Griffiths,* I find the instructions to be clearly incorrect under what is now the prevailing law in this circuit. Also, there is strong reason to suppose that the erroneous instructions may have been seriously prejudicial to the defendant. Mr. May's minimal evidence that age may have played *a* role in his firing might well not have sufficed to sustain the substantially higher burden of persuading a jury that age was Hobart's *sole* motivation. There is little doubt that Hobart would be seriously prejudiced by failure to apply the *Griffiths* standard.

In reaching these conclusions, I nonetheless find that it would be inappropriate to grant Hobart's JNOV motion in the present circumstances. Had Mr. May been aware that the *Griffiths* standard would apply, he might have pursued a different strategy at trial, perhaps making a mixed-motive case instead of one based on pretext. It therefore would be unfair to evaluate the evidentiary record under the stricter standard for JNOV purposes. On the other hand, the likelihood of serious prejudice to Hobart from the jury instructions as given requires that the *Griffiths* standard be applied to this case. Accordingly, I find that a new trial is warranted.