## Peter J. RESTIVO

v.

## SKF USA, INC.

### Civ. A. No. 93–6883.

United States District Court,
E.D. Pennsylvania.

June 15, 1994.

---

Charles F. Gilchrest, Routman, Moore, Goldstone & Valentino, Sharon, PA, for plaintiff.

Jean M. Gallagher, Pepper, Hamilton & Scheetz, Stephen J. Sundheim, Philadelphia, PA, James P. Hollihan, Manion, McDonough & Lucas, Pittsburgh, PA, Timothy D. Gifford, King of Prussia, PA, for defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In this age discrimination case, on a motion for summary judgment, the issue before me is whether evidence proffered by plaintiff of a *prima facie* case and some minimal evidence of only pretext, but not discrimination, are as a matter of law sufficient evidence of intentional age discrimination for plaintiff to necessarily survive summary judgment. I conclude that the proffer of such evidence is not as a matter of law sufficient to survive summary judgment. In this case, however, I find that plaintiff has produced enough evidence, which taken as a whole, permits a reasonable inference of age discrimination and therefore I will deny defendant's motion.

### I. Statement of Facts

Plaintiff, Peter J. Restivo ("Restivo"), began his employment with defendant, SKF USA, Inc. ("SKF"), in 1983. In 1987, he was promoted to sales manager in SKF's automotive after-market department ("A/T"). Restivo's employment was terminated in December, 1991. Deposition of Peter J. Restivo at 31–33.

In about April, 1990, SKF purchased CR Manufacturing Co. ("CR"), a former competitor in the market for bearings and seals and heavy duty trucks. Restivo Dep. at 48; Defendant's Ex. B. at ¶ 4. CR Services, a division of CR, was in substantially the same business as the A/T division of SKF but was significantly larger. Defendant's Ex. B. at ¶ 4. After the purchase, SKF and CR continued to function as independent companies. Despite a non-competition agreement between SKF and CR, there was continuing friction between the companies. Restivo Dep. at 50–55. As a result, in the summer of 1991 SKF developed a plan to merge with CR. Restivo Dep. at 64–65. Restivo learned of the planned merger in September, 1991. According to the Complaint, Restivo was born in October, 1930. At the time of the merger, he was nearly 61 years old. Restivo Dep. at 93; Complaint at ¶ 6.

SKF announced that it would have a new sales and marketing structure after the merger. SKF salespeople were guaranteed continuing employment until December, 1991 when the new structure would be implemented. At that time they would be interviewed for new positions in the merged company. Restivo Dep. at 96–97. A memorandum dated September 10, 1991 listed, as part of an agenda for a newly formed transition team, that although there would be a major "head count" reduction at SKF, the A/T personnel would not be affected. Plaintiff's Ex. C.

Despite this policy, at a September 23, 1991 meeting, John Lonati, Vice President of SKF, told Restivo that his employment would be terminated effective December, 1991. Lonati also told Restivo that SKF would offer him an attractive severance package. Restivo Dep. at 98–99.

After the meeting, SKF asked Restivo to continue to work temporarily following his formal termination as sales manager on a transition team formed to coordinate the merger of SKF and CR. Restivo Dep. at 103–05. Restivo made a concerted effort to retain his employment with SKF at his old position or another of equal or lesser rank. He telephoned a Group Vice President of SKF in Sweden and the President of SKF, USA, Inc. to try to persuade them to retain him. He contacted other SKF personnel to find other employment within the company. He contacted the regional manager in Cincinnati about a possible opening. He informed personnel managers that he would be willing to accept a lower paying job to remain with SKF. Restivo Dep. at 111–14, 119, 121–25, 139–141, 150–54, 163–64. SKF did not offer Restivo a permanent position, a position of lower rank, or any outplacement services. Restivo Dep. at 82–85, 140–54. Restivo agreed to join the transition team until March, 1992 and was hopeful that he might find another permanent position with SKF during that time. Restivo Dep. at 180–81.

Because SKF failed to offer him any permanent position, Restivo attempted to find other permanent employment outside of SKF. Restivo Dep. at 182–85. In December, 1991, L & S Automotive Products offered Restivo a job as Vice President of Sales. Restivo Dep. at 188. Restivo told Bruno Tassone, Vice President of SKF Bearing Services Co., that he had been offered

other employment. Tassone suggested that Restivo take the job with L & S because SKF would not permanently employ him after March, 1992. Restivo Dep. at 207–08. Restivo accepted the position with L & S.

When Restivo left SKF in December, 1991, he had an excellent performance record, had been awarded yearly performance bonuses in 1988 and 1989, and was qualified to be retained as a sales manager, national accounts manager, or as a salesman for SKF. Restivo Dep. at 234–35; Plaintiff's Ex. A.

As of January 1, 1992, Edward Vance, a 55 year old national sales manager at CR, was appointed national sales manager of the newly merged conglomerate, a position that combined his former duties with those of Restivo. Restivo Dep. 114–16; Defendant's Ex. C. at ¶ 8, 10. Three of five account specialists, aged 34 to 53, were also terminated as of December 1991 but were later hired back. In addition two other management positions were filled by a 40 and 43 year old respectively. Defendant's Answers to Plaintiff's First set of Written Interrogatories Ex. B.

Restivo brings this suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.S.A. § 955, *et seq.* SKF offers evidence of a legitimate, non-discriminatory business reason for dismissing Restivo. SKF maintains that it was cost efficient to reduce its personnel following the merger with CR. SKF contends that in reducing its managerial force, it had to choose amongst its own managers and those of CR. SKF proffers that it systematically chose managers formerly of CR because the decision had been made for CR to absorb any operations overlapping with those performed at SKF. Defendant's Ex. B. at ¶ 6; Defendant's Ex. D. at ¶ 4. SKF moves for summary judgment.

## II. Conclusions of Law

To succeed on a motion for summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if there is sufficient evidence for a reasonable fact-finder to reach a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Where there is a complete failure of proof concerning an essential element of the non-moving party's case the moving party is entitled to a judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Within this context, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity and Mort. Invest.,* 951 F.2d 1399, 1404 (3d Cir.1991).

The ADEA prohibits an employer from discharging an employee because of that person's age. 29 U.S.C. § 623(a). Restivo maintains that his employer, SKF, discharged him because of his age. SKF maintains that it was cost efficient to reduce its personnel following the merger with CR. See Facts.

### A. Establishing an ADEA Claim Without Direct Evidence of Discrimination

■ Age discrimination claims that are not supported by direct evidence are evaluated under the burden shifting test spelled out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *St. Mary's Honor Society v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[1] Plaintiff has the initial burden of establishing a *prima facie* case of discrimination by proving by a

1. Although *Hicks, Burdine,* and *McDonnell Douglas* are Title VII cases, "the analysis of Title VII cases has been applied to ADEA cases given the common purpose of the statutes and their nearly identical substantive provisions." *Reiff v. Phila. County Ct. of Common Pleas,* 827 F.Supp. 319, 324 (E.D.Pa.1993), citing *Elliott v. Group Medi-* *cal & Surgical Service,* 714 F.2d 556, 565 n. 11 (5th Cir.1983). Similarly, "the analysis of a claim for age discrimination under the PHRA is the same as employed under the ADEA." *Capik v. E.R. Carpenter Co.,* 1991 WL 269999 at *9 (E.D.Pa.1991).

preponderance of the evidence that he or she: 1) belongs to the class of persons protected by the ADEA (over 40 years old); 2) was qualified for the position he or she held 3); was dismissed despite his or her qualifications for the position; and 4) was replaced by a person of equal or lesser qualification who is sufficiently younger to allow an inference of age discrimination. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094–95; *McDonnell Douglas*, 411 U.S. 792, 93; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir.1992); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987). "[E]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Hicks*, —— U.S. at ——, 113 S.Ct. at 2747, citing *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

■ The burden then shifts to the defendant to "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, at ——, 113 S.Ct. at 2747. Under *Hicks*, once the defendant has "succeeded in carrying [this] burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens— is no longer relevant." at ——, 113 S.Ct. at 2749.

■ Plaintiff is left with the ultimate burden of proving that the stated reason for the termination is pretextual and that the defendant discriminated against him or her. *Hicks*, at ——, 113 S.Ct. at 2749. At the summary judgment stage, the court must apply the traditional standard in deciding whether plaintiff can meet this burden. A court must determine whether all the evidence permits a reasonable inference that "the [stated] reason [for the termination] was false, and that discrimination was the real reason" for the termination. *Hicks*, at ——, 113 S.Ct. at 2752. Although it is permissible to infer discriminatory intent from the facts of the *prima facie* case and the plaintiff's refutation of the defendant's explanation, the inference is not compelled. *Hicks*, at ——– ——, 113 S.Ct. at 2747–48.

## B. The *Prima Facie* Case

■ Restivo satisfies the first two elements of the *prima facie* case. He was age 61 and, therefore, within the protected class, at the time of dismissal. The parties do not dispute that he is qualified for a sales management position.

He arguably fails, however, to satisfy the final two elements. With respect to the third element, SKF maintains that it never actually terminated Restivo because he left voluntarily to become Vice-President of Sales for L & S Automotive Products. Restivo, argues that SKF actually discharged him when they informed him in September, 1991 that his position would expire in December, 1991. Restivo further argues that even if SKF did not actually terminate him, they constructively discharged him by giving him notice that he would be terminated in December, 1991 and by not making an effort to place him elsewhere within SKF.

"In order to establish constructive discharge, the plaintiff must establish that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person would have felt compelled to resign." *Florkowski v. First Pennsylvania Bank*, 1991 WL 274805 (E.D.Pa.1991). *See also Goss v. Exxon Office Sys. Co.*, 747 F.2d 885 (3d Cir.1984).

In *Florkowski*, defendant provided a company-sponsored six month placement program. Rather than participating in the program, plaintiff assumed the program would fail to place him and quit. Defendant later produced evidence showing that the program would have placed plaintiff in a comparable position. The court held that there was no constructive discharge because plaintiff quit without giving defendant a chance to place him as it said it would do.

In this case, SKF gave Restivo every indication that a replacement job would not be found and that his position on the transition team was only temporary. An incentive to stay, present in *Florkowski*, is therefore missing from this case. A reasonable person may have felt compelled to search elsewhere for employment.

■ Finally, Restivo may not satisfy the fourth requirement that he was replaced by a person sufficiently younger to infer discrimination. *Gray*, 957 F.2d 1070. Restivo's eventual replacement was 55 years old and, thus, also within the protected class and only six years younger than him. A narrow age discrepancy does not rule out an age discrimination claim, but may, in some circumstances, weigh less heavily in a plaintiff's favor than a greater age discrepancy. *Conjour v. Whitehall Township*, 850 F.Supp. 309, 319 (E.D.Pa.1994); *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 764–65 (3d Cir.1989); *Maxfiled v. Sinclair Int'l*, 766 F.2d 788, 793 (3d Cir.1985), *cert. denied* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). The closer a plaintiff is to the age of retirement and all of the benefits that accompany retirement, however, the stronger the inference of discrimination is despite a narrow age discrepancy. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56 (3d Cir.1988). Because Restivo, at 61, was approaching retirement, his 55 year old replacement may have been sufficiently younger to create an inference of discrimination.

With the facts stated in the light most favorable to him, Restivo has established a *prima facie* case.

## C. The Legitimate, Non–Discriminatory Reason

■ To meet its burden of proffering "a legitimate business reason for discharging the employee," *Gray*, 957 F.2d at 1078, SKF contends that the cost effectiveness of reducing overlapping personnel following its merger with CR led to the termination of Restivo. In a similar situation, Judge Troutman of our court, in *Capik v. E.R. Carpenter Co.*, 1991 WL 269999 (E.D.Pa.1991), found that the defendant had offered a legitimate business reason when it introduced evidence tending to show that there was a company reorganization where several employees were competing for the same remaining job. The remaining position was given to the incumbent who held it before the reorganization broadened the required duties.

SKF introduced "evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action." *Hicks*, —— U.S. at ——, 113 S.Ct. at 2748. In reducing its managerial force in the newly merged entity, SKF had to choose amongst its own managers and those employed by CR. SKF systematically chose the incumbents, those formerly of CR, because SKF decided that the larger CR would absorb the A/T operations of SKF. Existing CR managers, claims SKF, were more familiar with the policies to be employed by CR after the merger. SKF cites Defendant's Exhibit B. at ¶ 6 and Defendant's Exhibit D. at ¶ 4 as evidence of its reasoning. See Facts.

## D. Showing of Pretext

■ To survive a motion for summary judgment, Restivo must produce evidence that would permit a reasonable factfinder to conclude that SKF's proffered reason for terminating him is pretextual. *Hicks*, at ——, 113 S.Ct. at 2747; *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. I find that Restivo has provided sufficient, although minimal, evidence of pretext to survive summary judgment.

The Third Circuit has held that such factors as "defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638–39 (3d Cir.1993).

A September 10, 1991 memorandum by Edward Vance, the National Sales Manager for CR, outlined the agenda for a transition team meeting. One subsection of the memo was entitled "Head Count," inferring that the focus was on precisely who would survive the merger. As a part of this "Head Count," the memorandum goes on to state that there would be a "[m]ajor head count reduction at SKF" in which some employees would be terminated, however that the "Automotive and Truck personnel [would] not be affected." Plaintiff's Ex. C. One can infer that SKF terminated Restivo not because the merger required that A/T personnel be reduced but because SKF based its decision on the fact that Restivo was nearing retirement age while Vance, the CR manager, had a few

more good years left in him.[2] Viewed in the light most favorable to Restivo, the memo directly contradicts SKF's proffered reason and, thus, constitutes some minimal evidence of pretext.

### E. Evidence of Discrimination

After *Hicks*, to survive a motion for summary judgment Restivo also must produce evidence that would permit a reasonable factfinder to conclude that SKF intentionally discriminated against him because of his age. —— U.S. at ——, 113 S.Ct. at 2751. The Third Circuit Court of Appeals has not had the opportunity to give us guidance on the issue of precisely the quantum of evidence needed to meet the requirement of discrimination. Surely after *Hicks*, evidence of pretext can constitute one element of this proof. It may, or may not, standing alone, be sufficient, depending on the nature of the factual basis of the pretext evidence and the other evidence offered by the plaintiff. *See Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 142 (2d Cir.1993).

The September 10, 1991 "Head Count" memorandum by Edward Vance is not only evidence of pretext but also allows the inference that SKF discriminated against Restivo by terminating him because of his age. The memorandum states that, although there was to be reductions in personnel at SKF, the "Automotive and Truck personnel [would] not be affected." One can infer from this that until the defendant knew of precisely who comprised the A/T Division it intended to keep it in tact. Once it learned that its manager, the plaintiff, was 61 years of age, it changed its staffing plans.

In addition to this memorandum, the jury could reasonably be swayed by the fact that the plaintiff was 61 years of age and arguably close to retirement. Although replaced by a 55 year old, the jury might conclude that this type of age spread was more significant because Restivo was approaching retirement age and that an employer would be willing to live with a manager who was 55 but would perceive one that was 61 as over the hill. This might fairly be viewed as especially significant when considered in light of plaintiff's excellent performance record and job qualifications.

Furthermore, although SKF terminated younger employees at the same time as Restivo, there is evidence that many of these were hired back and placed within the company. On the other hand, Restivo was neither rehired nor offered an alternative position within the organization, although he made great efforts to find placement within the organization, including expressing a willingness to accept a demotion in position and a decrease in salary.

Although admittedly a close call and with a sense of caution, I find that Restivo has met the minimal threshold of evidence of discrimination to survive summary judgment, thus allowing the issue to be resolved by the factfinder.

### *ORDER*

**AND NOW,** this 16th day of June, 1994, upon consideration of the defendant's motion for summary judgment, plaintiff's response

---

**2.** Judge Pollak of our court, in *May v. Hobart Corp.*, 839 F.Supp. 309, 313 (E.D.Pa.1993), found enough evidence to support a showing of pretext when defendant proffered a non-discriminatory reason for dismissing plaintiff that due to a reduction in force plaintiff was terminated because his interpersonal skills were insufficient and there were other more qualified personnel for the position. In response, plaintiff produced evidence that he "was a valued employee who performed his job well." Plaintiff also introduced evidence tending to show that he at least "got along better with others than [his employer] claims." Plaintiff's evidence, because it reflected directly, although not substantially, upon defendant's proffered reason was sufficient to show pretext. *May*, 839 F.Supp. at 313.

In contrast, however, Judge Troutman of our court held in *Capik* that plaintiff failed to show pretext because she proffered only "indirect evidence [that did] not cast sufficient doubt or strike a reasonable disbelief of [her employer's] evidence to support its reason that [her 'replacement'] was already performing the duties of the remaining job position." 1991 WL 269999 at *9. Plaintiff proffered evidence to show that she was more qualified than the incumbent. "An employee's disagreement with an employer's evaluation of one's qualifications, or her disagreement with the employer's evaluation of its own needs or proper business decisions, is not enough to prove pretext." *Capik*, 1991 WL 269999 at *8.

and defendant's reply, it is **ORDERED** that defendant's motion is **DENIED**.